# EXHIBIT A

CIVIL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

JOHNNIE HARDY, JR.
    *PLAINTIFF,*

VS.                                      DOCKET NO. C-698547
                                                DIVISION "22"

SAVAGE SERVICES CORPORATION;
SAVAGE INDUSTRIAL RAIL SERVICES, INC.;
SASOL CHEMICALS (USA) LLC; AND
ABC INSURANCE COMPANIES 1-3
    *DEFENDANTS.*

## AFFIDAVIT OF EDWARD LEE

STATE OF LOUISIANA

PARISH OF CALCASIEU

BEFORE ME, the undersigned authority, personally came and appeared, EDWARD LEE, who, after being duly sworn, did depose and state the following:

1.    My name is Edward Lee. I am over the age of 21, a resident of Louisiana and fully competent to make this affidavit.

2.    I am the General Manager for Savage Transportation Management, Inc. My duties and responsibilities include oversight of the Savage operations at the Sasol plant in Westlake, Louisiana.

3.    I am familiar with a previous lawsuit filed by Johnnie Hardy, Jr. ("Hardy") in Texas state court and the allegations contained therein. A copy of that lawsuit is attached to this affidavit as Exhibit "A." I have also reviewed a second lawsuit filed in East Baton Rouge Parish, attached as Exhibit "B."

1

EXHIBIT A

4. In Exhibits "A" and "B," Hardy named Savage Services Corporation and Savage Industrial Rail Services, Inc. as defendants. Neither of these entities has any connection to the alleged incident involving Johnnie Hardy, Jr. Hardy was employed by Savage Transportation Management, Inc. (hereinafter sometimes referred to as "Savage"). Hardy purportedly resided in Sulphur, Louisiana. Hardy also named "Sasol Chemicals (USA) LLC" (hereinafter "Sasol") as a defendant in Exhibit "A." Sasol contracted with Savage Transportation Management, Inc. The other Savage entities have no connection to the Sasol plant or to Johnnie Hardy, Jr. and should be dismissed.

5. Hardy was not employed by Sasol. He was not supervised by Sasol personnel. He received his daily work assignments and instructions exclusively from Savage personnel.

6. At the time of his alleged accident on May 8, 2020, Hardy was acting within the course and scope of his employment with Savage Transportation Management, Inc.

7. On May 8, 2020, Hardy was under the control and direction of Savage for purposes of his employment with Savage.

8. On May 8, 2020, Hardy was not employed by or under the supervision or control of Sasol.

9. Hardy received his daily work assignments from Savage personnel. He was not supervised or otherwise given direct instructions by Sasol personnel.

10. Sasol did not provide any tools or equipment for use by Savage's employees.

11. Sasol did not exercise control or have the right to exercise control over Hardy's day-to-day activities, including at the time of the alleged May 8, 2020 accident.

12. Attached hereto as Exhibit "C" is a map of the Sasol facility at Westlake. Sasol owns 100% of the track at the Sasol facility.

13. Sasol owns/leases 100% of the rail cars at the Sasol facility.

14. Pursuant to written contract between Savage Transportation Management, Inc. and Sasol Chemicals (USA) LLC, Savage provides men and equipment to move Sasol's rail cars as requested by Sasol. However, all such movements are on Sasol's tracks, i.e., Savage only moves rail cars at the Sasol facility and not on any tracks owned/operated by any common carrier. Savage does not move rail cars from any common carrier at the Sasol facility.

15. Sasol does not own or operate the equipment used to move its rail cars around the Sasol facility. Sasol does not operate a railroad of any purpose related to the carriage of cargo for the public or the carriage of passengers for the public. The tracks owned by Sasol are used solely to facilitate the transportation of Sasol's products inside the Sasol plant.

16. Savage moves Sasol's rail cars around the Sasol facility using equipment provided pursuant to written contract. However, when those cars are moved into and out of the Sasol SIT (storage in transit) yard, they are moved by KCS (Kansas City Southern), which is a common carrier.

17. KCS enters the SIT yard to pick up trains that are assembled by Savage. When KCS removes or returns Sasol's rail cars from (or to) the SIT yard, KCS uses its own men and equipment. It does not utilize Savage's employees or equipment.

18. The Sasol tracks are locked and inaccessible to KCS unless and until Savage opens the tracks. Similarly, the KCS tracks are locked and inaccessible to Savage; KCS must open them to allow its locomotives into and out of the Sasol facility. Savage does not operate on KCS' tracks. With respect to operations at the Sasol plant, Savage operates exclusively on track owned by Sasol.

19. Savage has no direct contract with KCS. Rather, KCS is under direct contract to Sasol.

20. Sasol pays KCS directly for shipping its product.

21. KCS did not provide any tools or equipment for use by Savage's employees, including Hardy.

22. KCS did not exercise control or have the right to exercise control over Hardy's day-to-day activities, including at the time of the alleged May 8, 2020 accident.

23. With respect to operations in, on and around the Sasol facility, Savage's sole source of revenue is from Sasol.

24. Savage's income from Sasol does not vary according to how many cars it moves or how far it moves those cars. Instead, it receives a specified amount each month from Sasol for men and equipment needed to move Sasol's rail cars around the Westlake, Louisiana plant.

25. Savage receives no tariffs for rail services at the Sasol plant because Sasol owns the tracks.

26. Savage has no contract to provide rail services at the Sasol plant for anyone other than Sasol.

27. Savage receives a switch list from Sasol every day identifying the cars to be moved and where to move them, but all such movements are on Sasol tracks inside the Sasol plant. Savage does not generate any way bills or other paperwork to facilitate movement of the cars away from or back to the Sasol plant.

28. Employees of Savage Transportation Management, Inc. at the Sasol plant are not eligible to contribute to the railroad retirement system, including Edward Lee and Johnnie Hardy, Jr.

29. Plaintiff, Johnnie Hardy, Jr., was assigned to work exclusively at the Sasol facility in Westlake, LA. His job duties did not require him to work anywhere other than the Sasol facility.

He did not work on any tracks owned or operated by a common carrier. Because Savage does not provide rail service on tracks owned by anyone other than Sasol, Johnnie Hardy, Jr. did not provide rail service on tracks owned by anyone other than Sasol.

30. Sasol does not provide carriage of cargo or passengers for the public at the Sasol plant in Westlake, LA. Savage does not act as a "common carrier" at the Sasol plant in Westlake, LA. Rather, it works exclusively for Sasol under private contract.

Further, affiant sayeth not.

_____
EDWARD LEE

Sworn to and subscribed before me, Notary Public, on this _19_ day of August, 2020.

_____
Notary Public  R.W. CART #1875

My Commission Expires: With life

5