UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHNNIE HARDY, JR.

VERSUS

SAVAGE SERVICES CORPORATION,
ET AL.

CIVIL ACTION

NO. 20-565-JWD-RLB

*AND*

JOHNNIE HARDY, JR.

VERSUS

SAVAGE TRANSPORTATION
MANAGEMENT, INC.

CIVIL ACTION

NO. 21-729-JWD-RLB

### RULING ON MOTION FOR SUMMARY JUDGMENT BY SAVAGE DEFENDANTS

Before the Court is *Defendant's* (sic) *Motion for Summary Judgment* brought by Savage Services Corporation ("Savage Services"), Savage Industrial Rail Services, Inc. ("Savage Industrial") and Savage Transportation Management Inc. ("Savage Transportation") (collectively, "Savage Defendants") ("*Motion*"). (Doc. 61.) It is opposed by Plaintiff Johnnie Hardy, Jr. ("Hardy" or "Plaintiff"). (Doc. 66.) The Savage Defendants filed a reply, (Doc. 72), and a supplemental memorandum, (Doc. 77). The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the reasons which follow, the *Motion* is granted.

I.  PROCEDURAL BACKGROUND

The procedural background is particularly relevant to resolving the issues raised by the *Motion*. The Savage Defendants accurately summarize the procedural background as follows:

This consolidated litigation began almost two years ago, when Johnnie Hardy, Jr. filed suit in state court against Savage Services Corporation ("Savage Services"), Savage Industrial Rail Services, Inc. ("Savage Industrial"), and Sasol Chemicals (USA) LLC ("Sasol"). Hardy alleged that he sustained injuries while working as a switchman for Savage Services at Sasol's chemical plant; he sought damages under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, and in tort for negligence. (*See Hardy v. Savage Servs. Corp.,* No. 20-565-JWD-RLB, Doc. 1-1 (M.D. La. 2020) [hereinafter *Hardy I*].) The defendants removed that case to this Court based upon diversity of citizenship, contending that Hardy fraudulently joined the FELA claim to prevent removal. (*Hardy I*, Doc. 1.) In short, Savage Services and Savage Industrial argued they were not common carriers under FELA.

Savage Services and Savage Industrial filed a Motion for Summary Judgment on this precise issue on September 4, 2020. (*Id.*, Doc. 2.) That motion essentially argued simply that Hardy had not sued his employer. The Court essentially denied the motion as premature pending completion of discovery. (*Id.*, Doc. 8.)

Nearly a year later on August 13, 2021, and on the eve of the deadline for filing dispositive motions, Savage Services and Savage Industrial re-filed a substantially similar motion, arguing that Hardy had failed to sue his actual employer, and in any event, the Court had already concluded "there can be no reasonable possibility that [Hardy] would be able to meet his burden of proving the Savage Defendants are a common carrier for purposes of FELA." (*Id.*, Doc. 26.) Hardy countered that he should be given more time to conduct discovery, even though the discovery deadline had already passed. While initially denying Hardy's request, the Court later allowed him to take corporate depositions, which were completed back in October of 2021. (*Id.*, Doc. 50.)

Thereafter, Hardy moved to dismiss his claims against Savage Services and Savage Industrial *without prejudice*. (*Id.*, Doc. 55.) This Court denied that motion *sua sponte* because Hardy's motion did not say whether the defendants consented. (*Id.*, Doc. 56.)

In its suit against the Savage Defendants, Plaintiff "alleg[es] negligence and gross negligence under [the] FELA."[1] (Doc. 66 at 2 (citing Doc. 70-1, Pl.'s Original Pet.).)

## II.    FACTUAL BACKGROUND

The Court notes at the outset that the Savage Defendants filed a *Statement of Uncontested Facts* ("*SUMF*") in support of their *Motion* (Doc. 61-4), but Plaintiff failed to submit a specific response as required by this Court's Local Rules. Local Rule 56 requires a party opposing a motion for summary judgment to "submit with its opposition a separate, short, and concise statement of material facts" that admits, denies, or qualifies the facts set forth in the moving party's statement of material facts. M.D. La. Civ. R. 56(c). The opposing party must also specifically reference the paragraph number of each fact being admitted, denied, or qualified. *Id*. Additionally, unless a fact is admitted, the opposing party must support each denial or qualification with a citation to the specific page or paragraph of identified record material supporting their assertion that the fact is, in whole or in part, incorrect or untrue. M.D. La. Civ. R. 56(c), (f).

Relevant here, Local Rule 56(f) provides: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, *shall be deemed admitted* unless properly controverted." M.D. La. Civ. R. 56(f) (emphasis added). *See also McGhee v. Fay Servs., Inc.*, No. 21-652, 2023 WL 2335376, at *1 (M.D. La. Mar. 2, 2023) (deGravelles, J.) ("For this reason, the facts set forth in Defendants' supporting statement of material facts are deemed admitted for summary judgment purposes."). "While the Court may

---

[1] 45 U.S.C. § 51.

deviate from strict enforcement of this rule when [the mover's] assertions in its SUMF are contradicted by other summary judgment evidence in the record," *Squeeze Me Once, LLC v. SunTrust Bank*, No. 19-787, --- F. Supp. 3d ----, 2022 WL 4394550, at *1 n.1 (M.D. La. Sept. 22, 2022) (deGravelles, J.) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 n.2 (5th Cir. 1998)), the record facts relevant to the Court's decision are largely uncontroversial and unrebutted.

Sasol Chemicals (USA) LLC ("Sasol") operates a chemical plant in Westlake, La. (Doc. 51-4 at 1, Decl. of Richard Lee, ¶ 2; Doc. 61-2, Aff. of Edward Lee, ¶¶ 2, 12.) As a part of its operations, Sasol utilizes railroad cars; "Sasol owns/leases 100% of the rail cars at the Sasol facility." (Doc. 61-2, Aff. of Edward Lee, ¶ 13.)

"Pursuant to a written contract between [Savage Transportation] and [Sasol], Savage [Transportation] provide[d] men and equipment to move Sasol's rail cars as requested by Sasol. However, all such movements [were] on Sasol's tracks, i.e., Savage [Transportation] only move[d] rail cars at the Sasol facility . . . ." (*Id.* ¶ 14.) "With respect to operations at the Sasol plant, Savage [Transportation] operate[d] exclusively on track owned by Sasol." (*Id.* ¶ 18.) "The tracks owned by Sasol are used solely to facilitate the transportation of Sasol's products inside the Sasol plant." (*Id.* ¶ 15.) Sasol neither owned nor operated the equipment used to move its rail cars around the Sasol facility. (*Id.*) That was done by Savage Transportation.

An area of the facility where rail cars are moved and where they are washed, cleaned and assembled is called the "Sasol SIT (storage in transit) yard[.]" (*Id.*, ¶ 16.) Sasol contracted with "Savage [Transportation] to operate the SIT yard and wash bay[.]" (Doc. 51-6 at 38, 30(b)(6) Dep. of Sasol.) Sasol had a "long-term lease agreement" with Kansas City Southern Railroad ("KCS") for the lease of the SIT yard and wash bay. (*Id.*)

4

Savage Transportation did not move any rail cars for any common carrier at the Sasol facility. (Doc. 61-2, Aff. of Edward Lee, ¶ 14.) Sasol did not operate a railroad for any purpose related to carriage of cargo for the public or the carriage of passengers for the public. (*Id*. ¶ 15.) The tracks which Sasol owned were used solely to facilitate transportation of Sasol's products inside the Sasol plant. (*Id*.) KCS never provided any tools or equipment for use by Savage Transportation's employees nor did it exercise or have the right to exercise control over Savage Transportation's employees' day to day activities. (*Id*. ¶¶ 21–22.)

If Sasol's products needed to be moved by railcar out of the Sasol plant, KCS would perform that service, using its own men and equipment with no involvement of Savage Transportation or its personnel. (*Id*. ¶¶ 16–17.) The Sasol tracks remained locked and inaccessible to KCS unless and until Savage Transportation opened the tracks. (*Id*. ¶ 18.) Likewise, KCS's tracks were locked and inaccessible to Savage Transportation unless KCS opened them to allow its locomotives into or out of the Sasol facility. (*Id*.)

Savage Transportation never contracted with KCS; rather, KCS contracted directly with Sasol, with Sasol paying KCS directly for shipping its product out of the plant. (*Id*. ¶¶ 19–20.)

Savage Transportation's sole source of income came from Sasol which income did not vary based on how many cars were moved or how far they were moved. (*Id*. ¶¶ 23–24.) Rather, it received a specific amount each month for the men and equipment needed to move Sasol's rail cars around the plant. (*Id*. ¶ 24.)

Savage Transportation received no tariffs for rail services at the Sasol plant because Sasol owned the tracks. (*Id*. ¶ 25.) Savage Transportation's employees at the Sasol plant, including Plaintiff, were not eligible to contribute to the railroad retirement system. (*Id*. ¶ 28.) Hardy was

not employed by or under the supervision of Sasol and Sasol never exercised control or have a right to control Hardy's daily activities. (*Id*. ¶¶ 8, 11.)

Plaintiff Hardy was employed by Savage Transportation and, according to Edward Lee, "was assigned to work exclusively at the Sasol facility in Westlake, LA. His job duties did not require him to work anywhere other than the Sasol facility." (*Id*. ¶ 29.)

Hardy brings this personal injury claim for damages suffered in an on-the-job injury which occurred on May 8, 2020 while working in the SIT. Plaintiff alleges that he was injured when a highly pressurized water tank exploded, causing highly pressurized water to be shot at his head, neck and shoulder. (Doc. 70-2 at 108–09, 116–17, Hardy Dep.) The explosion is alleged to have occurred because of a failed rubber gasket on the pressurized water tank, also referred to as a filter tank. (Doc. 53-4 at 20–21, 25, 30(b)(6) Dep. of Sasol.)

### III. SUMMARY OF PARTIES' ARGUMENTS

#### A. Savage Defendants

First, with respect to Savage Industrial and Savage Services, the Savage Defendants argue that "neither of those entities has any relationship to Hardy, Sasol or the Sasol plant in Westlake, LA." (Doc. 61-1 at 10 (citing Doc. 61-2 ¶ 4; Doc. 61-3, Dep. of Michell Hollingshed at 13–14, 22, 26–29, 42–43).) "Rather, Plaintiff's employer, Savage Transportation, entered into a contract with Sasol." (*Id*. (citing Doc. 61-2 ¶¶ 4, 14).) "Consequently, neither Savage Services nor Savage Industrial owes the Plaintiff any legal duty vis-à-vis the Sasol plant, the wash rack, or any other equipment allegedly involved in his accident." (*Id*.) Furthermore, since an employment relationship is "an essential element to recovery under FELA[,]" and neither employed Hardy, "they obviously cannot be liable to him under [the] FELA." (*Id*.)

6

As to Savage Transportation, the Savage Defendants argue that in order to be liable under the FELA, Savage Transportation must be a common carrier, (Doc. 61-1 at 8), and "this Court has already determined [that] none of the Savage Defendants are common carriers for purposes of FELA . . . ." (*Id*. at 9 (citing *Hardy I*, 2021 WL 1432921 at *3 n.2).) "There is consequently no FELA claim against Savage Transportation because it does not qualify as a FELA employer: Savage Transportation is not a common carrier." (*Id*. at 10.)

Because he is not covered under the FELA, Hardy is subject to the Louisiana Workers' Compensation Act ("LWCA"). Under the LWCA, "an employee cannot sue his employer for damages in tort." (*Id*. at 11 (quoting *Gonzales v. T. Baker Smith*, *LLC*, No. 13-644, 2014 WL 905281, at *2 (M.D. La. Mar. 7, 2014)).) As to the intentional tort exception to that general rule, the Savage Defendants argue that "[t]here is no claim—let alone evidence of—an intentional tort . . . [since] Hardy's non-FELA claims sound in negligence." (*Id*. (citing *Hardy II*, Doc. 1-1).)

### B. Hardy

Hardy argues that common carrier status is a "factually intensive inquiry" and there are disputed facts in the record which require that the *Motion* be denied. (Doc. 66 at 1, 11–12.) "Plaintiff's argument in its essence is simply that: Savage's[2] service is interwoven with the other companies' common carrier services and Savage and these entities are mutually dependent on each other; therefore, Savage constitutes a common carrier [and] FELA applies." (*Id*. at 12–13.) Stated another way, Savage is a common carrier because "Savage's services are a necessary and integral part of both Sasol and KCS's total rail operation . . . [and] the duties it performs for Sasol and KCS are . . . offered indiscriminately to the public from these common carriers." (*Id*. at 20.)

---

[2] In its briefing, Plaintiff draws no distinction between or among the Savage Defendants, simply referring to all three as "Savage."

7

Plaintiff argues that the facts supporting its theory of Savage's common carrier status include that Savage performed "essential services to fulfill both Sasol['s] and KCS's obligations to their common carrier status." (*Id*. at 14; *see also id*. at 14–19.)

Next, Plaintiff argues that Savage's common carrier status is demonstrated because "Savage is compensated for its services provided to Sasol and, by extension, KCS under the entities' contractual relationship." (*Id*. at 19; *see also id*. at 19–20.) Plaintiff maintains that Savage's contentions have been "rejected by various courts and are contradictory to evidence of record." (*Id*. at 20; *see also id*. at 20–22 (citations omitted).)

Finally, Plaintiff argues in the alternative that even if Savage is not a common carrier it is still liable in tort as the custodian of the defective tank under Louisiana Civil Code article 2317 and/or because Savage intentionally injured Plaintiff. (*Id*. at 22–26.)

### C.  Reply of Savage Defendants

As to Savage Services and Savage Industrial, Plaintiffs offer only "lip service" but no evidence to support their allegation that these entities were common carriers or, for that matter, that they employed Hardy or had anything to do with the Sasol plant or the equipment involved in the accident. (Doc. 72 at 2.) As to Savage Transportation, Plaintiff has not disputed the key facts that prove that Savage Transportation was not a common carrier. Savage Transportation vehemently disputes Plaintiff's premise that by fulfilling its limited obligations under its contract to Sasol, "this 'connection'—no matter how tenuous—means Savage Transportation's common carrier status must be decided at trial." (*Id*. at 3.) Rather than support his position, Plaintiff's cited cases "undermine[] his argument at every turn." (*Id*. at 4–5 (citations omitted).) On the issue of Savage Transportation's alleged common carrier status, it concludes:

> Simply put, Savage Transportation maintained a private contract with Sasol to perform service solely within Sasol's plant. It did not

8

> contract with, nor did it undertake to perform services for KCS. On this record, there is no basis in fact or law to conclude that Savage Transportation is a common carrier.

(*Id*. at 6.)

Regarding Plaintiff's alternative arguments, the Savage Defendants insist that LWCA's bar against an employee's tort suit against his employer applies to actions under Louisiana Civil Code article 2317. (*Id*. at 7–8.) In addition, Plaintiff has submitted no evidence supporting his theory that any Savage defendant or employee intentionally injured Plaintiff, i.e., desired to harm him or that Plaintiff's injuries were substantially certain to follow from their conduct. (*Id*. at 8–10.) In their supplemental memorandum, the Savage Defendants draw the Court's attention to its decision on this issue in *Populars v. Trimac Transp., Inc*., No. 19-316, 2022 WL 2824660 (M.D. La. June 10, 2022), *aff'd sub nom. Populars v. Trimac Transp., Inc*., No. 22-30413, 2023 WL 20866 (5th Cir. Jan. 3, 2023) (unpublished per curiam), on the issue of what constitutes an intentional act in this context. (Doc. 77.)

### IV. STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## V. DISCUSSION

There are two main issues raised by this *Motion*: has Plaintiff raised a genuine issue of material fact regarding any Savage Defendant's status as a common carrier under the FELA and, if so, does the LWCA bar Plaintiff's tort claim?

### A. Savage Services and Savage Industrial

Savage Services and Savage Industrial offer summary judgment evidence showing that neither of those entities had any relationship to Plaintiff, Sasol, the Sasol plant in Westlake, or the accident in question. (Doc. 61-2, Aff. of Edward Lee ¶ 4; Doc. 61-3, Dep. of Michelle Hollingshed, at 13–14, 22, 26–29, 42–43.) Plaintiff failed to respond to the Savage Defendants' Statement of Uncontested Facts to the same effect (Doc. 61-4 at 2, ¶ 8) and this fact is therefore deemed admitted. Furthermore, in Plaintiff's brief, he makes no effort to distinguish between the three entities and points the Court to no summary judgment evidence that contradicts or calls into question Defendants' evidence cited above. Therefore, the *Motion* is granted, and Plaintiff's claims against Savage Services and Savage Industrial are dismissed with prejudice.

### B. Savage Transportation – Common Carrier Vel Non

Plaintiff's claim against Savage Transportation is under the FELA. The plaintiff's burden under the FELA is well known.

10

> "Under FELA, an injured railroad employee may recover damages for 'injury or death resulting in whole or in part from the negligence' of the railroad." *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 416 (5th Cir. 2012) (citing 42 U.S.C. § 51). To prevail under FELA, an injured railroad employee must prove that **"(1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) [the plaintiff] was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence."** *Weaver v. Mo. Pac. R.R. Co.,* 152 F.3d 427, 429 (5th Cir. 1998) (internal citations omitted).

*Cordes v. New Orleans Pub. Belt R.R. Corp.*, No. 21-432, 2022 WL 539274, at *3 (E.D. La. Feb. 23, 2022) (emphasis added).

Plaintiff's FELA claim against Savage Transportation hinges on whether Savage Transportation is a common carrier. Because Plaintiff alleges that Savage is a common carrier because of Savages "operations integral to both Sasol and KCS," the Court considers the common carrier status of both Savage and Sasol.

> A common carrier has been defined generally as one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant.

*Huntley v. Bayer MaterialScience, L.L.C*., 452 F. App'x 453, 456 (5th Cir. 2011) (quoting *Lone Star Steel Co. v. McGee*, 380 F.2d 640, 643 (5th Cir.1967) (quoting *Kelly v. Gen. Elec. Co.,* 110 F.Supp. 4, 6 (E.D. Pa.), *aff'd*, 204 F.2d 692 (3d Cir. 1953))).

> Utilizing these general definitions and categories, we identified four considerations "of prime importance in determining whether a particular carrier is a common carrier": (1) actual performance of rail service; (2) the service being performed is part of the total rail service contracted for by a member of the public; (3) the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a

11

>contractual relationship with a railroad, and hence is deemed to be holding itself out to the public; and (4) remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad.

*Id.* at 457 (quoting *Lone Star*, 380 F.2d at 647).

Plaintiff relies on *Lone Star* since the Fifth Circuit imposed FELA liability on a plant owner which utilized rail services within the plant. (Doc. 66 at 13–14.) However, as pointed out by the Savage Defendants, *Lone Star* is distinguishable from the present case in important ways. For instance, other industries performed operations within Lone Star's plant, including T&N, a common carrier. *Lone Star*, 380 F.2d at 642. Lone Star owned shares of T&N's capital stock. *Id*. Lone Star "perform[ed] rail services between its classification yard and various locations within its plant which T & N [was] obligated to perform . . . ." *Id*. at 644. Importantly, T&N's freight charge included a charge for rail services that Lone Star handled." *Id*. at 643.

By contrast, neither Sasol nor Savage performed duties for KCS, and Savage had no contractual relationship with KCS. Even as to Sasol, the Court finds the current case more analogous to the facts in *Huntley*, where the Court found:

>Bayer did not provide rail services that a common carrier was otherwise obligated to perform; did not share ownership with a common carrier; did not contract with a common carrier to provide rail services; did not link common carriers together; performed rail services within the Facility only for itself and for a small number of unrelated entities who lease property within the Facility owned by Bayer; and performed such services for the Lessees pursuant to individual contracts and assumed no obligation to carry for others. Accordingly, Bayer was not a "common carrier by railroad" under the FELA, and the district court correctly granted summary judgment in Bayer's favor on Huntley's FELA claim.

*Huntley*, 452 F. App'x at 460.

As mentioned earlier in this ruling's Procedural History, this is not the first time the Court has addressed the issues raised by the present *Motion*. In the context of a motion to remand but utilizing the " 'summary-judgment like procedure for disposing of fraudulent joinder claims,' " *Hardy v. Savage Servs. Corp.*, No. 20-565, 2021 WL 1432921, at *2 (M.D. La. Mar. 26, 2021) (quoting *Landry v. Delta Well Surveyors*, No. 96-3805, 1997 WL 191511, at *2 (E.D. La. Apr. 16, 1997) (citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990))), *report and recommendation adopted*, No. 20-565, 2021 WL 1433040 (M.D. La. Apr. 15, 2021), this Court held:

> Where a company such as Sasol clearly delineates its operations between services provided within its plant on tracks owned by Sasol with work provided by the Savage Defendants, and services beyond its plant with work provided by KCS, a noted common carrier, there can be no reasonable possibility that Plaintiff would be able to meet his burden of proving the Savage Defendants are a common carrier for purposes of FELA. *See Rabb v. E. Camden & Highland R. Co.*, 2009 WL 960105 (W.D. La. Apr. 8, 2009).
>
> * * *
>
> Even viewing the evidence and allegations in the light most favorable to Plaintiff, there is no possibility that Plaintiff would be able to establish the threshold inquiries of employment and common carrier status for purposes of liability under FELA.

*Hardy*, 2021 WL 1432921, at *3.

In reaching its conclusion, the Court rejected the same argument that Plaintiff again makes here, i.e., ". . . that the question of whether Defendants are common carriers for purposes of FELA is a fact-intensive inquiry, and that where a web of corporate relations ties a Defendant to a particular company or other entities that plainly are common carriers, common carrier status may be present." *Id*. at *2 (record citation omitted).

When Plaintiff's separate and subsequent suit against Savage Transportation was again removed to this Court, (*Hardy II*, No. 21-729), this Court, again using the same standard as before, reached the same conclusion: "[V]iewing the evidence and allegations most favorable to Hardy, there is no possibility that Hardy would be able to establish the threshold inquiry that Savage Transportation is a common carrier for the purposes of liability under FELA." (Doc. 14 at 10; *report and recommendation adopted*, *Hardy I*, Doc. 58.)

For a second time, this Court rejected the same argument Plaintiff makes in the present *Motion* and, in doing so, relied on the very case Plaintiff relies on in his opposition brief here (Doc. 66 at 12–14), *Lone Star Steel Co. v. McGee*, 380 F.2d 640 (5th Cir. 1967). (*Hardy II*, Doc. 14 at 8–9.) This Court found that Plaintiff's deposition testimony "d[id] not, however, controvert the assertions in the affidavit of Edward Lee with respect to Savage Transportation's involvement in railcar services, pursuant to its contract with Sasol, within the confines of Sasol's plant." (*Id*.) As this Court concluded earlier, and concludes again after having considered the entire record and submissions of the parties:

> Having considered the summary judgment type evidence submitted by the parties, the Court concludes that the considerations of *Lone Star* do not support a finding that Savage Transportation is a common carrier. There is no dispute that Savage Transportation maintained a private contract with Sasol to move railcars solely in Sasol's plant, that they in fact moved railcars solely in Sasol's plant, that Sasol's tracks are used solely to transport products within its own plant, and that Savage Transportation does not move railcars owned by KCS. Importantly, there is no contractual relationship between Savage Transportation and KCS, much less an ownership relationship between those two entities like the one between Lone Star and T&N. Savage transportation does not own KCS and is paid by Sasol through a contractual agreement. The summary judgment type evidence establishes there is no possibility that Savage Transportation "could be deemed to hold itself out to the public as a common carrier." *Rabb [v. E. Camden & Highland R. Co.,* No. 08-244, 2009 WL 960105, at *5 (W.D. La. Apr. 8, 2009)].

(*Id*. at 9.)

Plaintiff has failed to raise a material issue of fact regarding Savage Transportation's alleged status as a common carrier. The Court grants Savage Transportation's *Motion* on this issue.

### C. Savage Transportation's Possible Tort Liability

Since FELA does not apply, Louisiana law does, and therefore the LWCA bars a negligence tort suit by Hardy against Savage Transportation, Hardy's employer.

"[T]he rights and remedies herein granted to an employee or his dependent on account of an injury, . . . for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages[.]" La. Rev. Stat. § 23:1032(A)(1)(a); *see also Gonzales v. T. Baker Smith, LLC*, No. 13-644, 2014 WL 905281, at *2 (M.D. La. Mar. 7, 2014).

The exclusivity provision reaches tort actions of the specific kind alleged in briefing by Plaintiff: liability under Louisiana Civil Code article 2317. The "exclusive remedy rule also excludes the employer from the strict liability provisions of [La. Civ. Code] art. 2317." *Curtis v. Jazz Casino Co.*, No. 01-2723, 2002 WL 1585608, at *3 (E.D. La. July 15, 2002) (quoting *Reeder v. Laks Corp.,* 555 So. 2d 7, 9 (La. App. 1 Cir. 1989)).

Plaintiff's final effort to avoid the reach of LWCA's exclusivity provision is based on its argument that Savage Transportation intentionally injured Plaintiff. (Doc. 66 at 25–26.) In support of its position, Plaintiff argues, "Savage knew or should have known that the filter tank was defective but failed to do anything to mitigate potential harm or prevent Plaintiff's injury." (*Id*. at 25.) This effort to state the standard for the intentional tort exception to LWCA's exclusivity provision badly misses the mark.

This Court recently addressed the intentional act exception to LWCA's exclusivity provision.

15

> An "intentional act" requires the actor to either (1) consciously desire the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) know that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.
>
> *Matthews v. Turner Indus. Grp.*, LLP, 2020-00493 (La. 6/22/20), 297 So. 3d 723 [ ] (quoting *Cole v. State Dep't of Pub. Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134, 1140 and *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981)).

*Populars v. Trimac Transp.*, No. 19-316, 2022 WL 2824660, at *2 (M.D. La. June 10, 2022) (deGravelles, J.), *aff'd sub nom. Populars v. Trimac Transp., Inc.*, No. 22-30413, 2023 WL 20866 (5th Cir. Jan. 3, 2023). *See also Million v. Exxon Mobil Corp.*, No. 17-60, 2019 WL 3210079, at *4 (M.D. La. July 16, 2019 (Dick, C.J.)

Plaintiff argues that Savage "knew about the leak in the tank . . . and ignored the known defect." (Doc. 66 at 26.) He contends that "Defendants should have been inspecting these tanks for defects." (*Id*.) These allegations are negligence-based, and the evidence supporting them do not approach what is required to show intentional conduct on the part of Savage Transportation. *Populars*, 2022 WL 2824660, at *2. Therefore, this part of Savage Transportation's *Motion* is granted.

**[intentionally left blank]**

## VI. CONCLUSION

For the reasons given above, *Defendant's* (sic) *Motion for Summary Judgment* brought by Savage Services Corporation, Savage Industrial Rail Services, Inc., and Savage Transportation Management Inc. (Doc. 61), is **GRANTED** and all claims by Johnnie Hardy, Jr. against Savage Services Corporation, Savage Industrial Rail Services, Inc., and Savage Transportation Management Inc. are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on March 14, 2023.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**